UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CR. NO. 19-cr-10174-LTS |
| ) | |
| RAHSJEEM BENSON ) | |

**DEFENDANT RAHSJEEM BENSON'S SENTENCING MEMORANDUM**

Mr. Benson stands before this Court convicted, after trial, of being a felon in possession of a firearm, in violation of 18 U.S. C. § 922(g)(1). However, he also stands before this Court as:

- The son of a fourteen-year-old, drug-addicted mother, who with her boyfriend, beat Mr. Benson;

- A boy who never met his father;

- A grandson who left his home for his grandmother's home in South Carolina when staying with his mother became too dangerous;

- A Dorchester High School graduate;

- An accomplished UMass Boston basketball player;

- A mentor and volunteer for Boston at-risk youth; and

- Most importantly, the loving father of four children who serve as his motivation and light to turn his back on the criminal justice system.

Mr. Benson submits this memorandum in support of his request for a sentence of 84 months incarceration in the Bureau of Prisons to run concurrent with District of Maine Docket

1

No. 2:19CR0122 with three years of supervised release. This imprisonment term is "sufficient, but not greater than necessary, to comply with" the purposes of federal sentencing. 18 U.S.C. §3553(a).

I. <u>The Proposed Sentence of 84 months with 3 Years Supervised Release Is Appropriate Under 18 U.S.C. §3553(a)</u>

Pursuant to 18 U.S.C. §3553(a)(1) and (2), this court, in determining what sentence to impose, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed—
    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

While the Court may address any and all factors in §3553(a), the following warrant specific consideration:

*A. The History and Characteristics of Rahshjeem Benson Support His Sentencing Recommendation*

The requested sentence of 84 months incarceration is appropriate in this case in light of Mr. Benson's history and characteristics. Mr. Benson accepts and respects the need for punishment. Nonetheless, his heart is heavy knowing his four children will not see him outside of a prison for years. Having grown up without a father, Mr. Benson's own, physical absence from his children's lives fills him with pain and regret. At the same time, however, these four children are his light and motivation to move forward and out of the criminal justice system. Even during his incarceration pending trial, Mr. Benson remained as engaged as possible in his

2

children's lives, albeit from behind concrete walls and barbed wire, helping with homework and doling out basketball tips.

From the moment Mr. Benson was born in Dorchester to a fourteen-year-old mother, Gretta Benson, Mr. Benson's road was not destined to be an easy one. Gretta was a child herself, used drugs regularly, and struggled with her mental health. Mr. Benson's grandmother welcomed Mr. Benson into her South Carolina home since the age of two and raised him as her own.

When Mr. Benson was seven years old, he returned to Boston to live with his mother. Mr. Benson witnessed his young mother use drugs and change entirely. His mother would sit in their home with his aunts, and they hit, pushed, and yelled at Mr. Benson. In a year, eight-year-old Mr. Benson learned his grandmother was not actually his mother, met his biological mother, moved from South Carolina to Boston to be with his mother, and began enduring abuse at her hands.

The following year, Gretta committed to her sobriety. However, the abuse did not cease with the drug use. Gretta found a boyfriend. This boyfriend and Gretta left marks on Mr. Benson's body as they hit and yelled at him. As a child, Mr. Benson had no capacity to understand that he did not cause or provoke his mother's behavior. As a result, he remembers growing up believing his mother and her boyfriend's unkind words, internalizing a belief that he would not amount to much.

A traumatic custody battle for Mr. Benson ensued where he was ripped from his mother's home to his grandmother's home to foster care, kicking out any semblance of stability from under the young boy's feet. Eventually he was placed back with his grandmother. Mr. Benson credits his grandmother for giving him any chance of success with her dogged love and care of

Mr. Benson. With his grandmother's encouragement, Mr. Benson applied himself in school. He encountered some learning difficulties and was eventually diagnosed with attention deficit disorder (ADHD). When Mr. Benson was fifteen years old, the court ordered him to return to his mother's home.

Against seemingly significant odds given his childhood, Mr. Benson aimed for college. Mr. Benson graduated from Dorchester High School and Mr. Benson's outlook was promising. Recruiters sought Mr. Benson to play basketball at their universities. However, Mr. Benson stumbled and found himself incarcerated for four years at age eighteen. Nonetheless, when Mr. Benson was released in 2011, he had not forgotten or given up on his plans. He enrolled in Massachusetts Bay Community College in Wellesley as a full-time student, where he began working at the rec center and practicing with the Mass Bay basketball team. Mr. Benson began working locally with at-risk youth. By 30 years old, Mr. Benson was a full-time student at UMass Boston where he was the center on the basketball team. *Exhibit 1* (WBUR Article); *Exhibit 2* (Massmedia Article).

When Mr. Benson was 28 years old, he met his father for the first time. Mr. Benson found it jarring to meet this stranger who was responsible for half of his DNA. Mr. Benson promised himself he would never allow his role in his children's lives to be so limited. Today, Mr. Benson has four children. True to his word, Mr. Benson has maintained a close relationship with all of his children and cares profoundly for them.

In 2010, Mr. Benson married his long-term girlfriend, Tiffany Benson (nee Taylor). Together, they had two children, Leilani and Rahshjeem Jr. Mr. Benson and Tiffany decided to separate in 2019, but they respect one another and co-parent well. Currently, Mr. Benson is in a relationship with Laoura Tabagoua, and they have been together for the past six years. Both Ms.

Benson and Ms. Tabagoua have supported Mr. Benson throughout this case and as the Court recalls, Ms. Tabagoua attended every day of trial in support of Mr. Benson, along with their two children, Luna and Lyon. Their care and concern for Mr. Benson stems in no small part from the wonderful father he has always been to all of his children.  Even after Ms. Benson and Mr. Benson separated, Mr. Benson's children from that marriage would regularly spend days at Mr. Benson's house, which he shared with Ms. Tabagoua and their children.  Despite Mr. Benson's struggles within the criminal justice system, he has remained present in his family's lives in any way that he can, and his love and efforts are evident in the cohesiveness of his family and the harmonious relationship between all of his children.  He has always supported his children financially when able, played an active role in their school and athletics, and raised them with love.

Even though Mr. Benson has spent the past few years incarcerated, Mr. Benson has consistently behaved appropriately and remained free of any disciplinary action.  He has also engaged in and completed programs while incarcerated, including: (1) Adjustment to Incarceration, (2) Living with Others, (3) Anger Management for Substance Abuse Clients, (4) Taking a Chance on Change Part Three, (7) S.M.A.R.T. Goals, (8) Becoming Your Future Self, (9) Leadership Skills Part One, (10) Leadership Skills Part Two, (11) Self-Care, (12) Personal Boundaries, (13) S.M.A.R.T. Goals Technique, (14) Substance Abuse, (15) Victim's Impact, (16) Decision Making, (17) Coping Skills, (18) Anger Management, and ( 19) Criminal Thinking. *Exhibit 3* (Letter from Wyatt).  Mr. Benson is also currently working as a third shift unit worker. Mr. Benson's unit counselor writes that Mr. Benson demonstrates a respectful attitude.

Of course, Mr. Benson's incarceration has left a profound void in his family's lives.  Mr. Benson has several siblings who have stood by Mr. Benson throughout this case.  Mr. Benson's

5

sister, Jazmine Benson, wrote a letter on Mr. Benson's behalf, telling the Court of the joy that Mr. Benson brings to his family. She describes Mr. Benson as a great father to his children. She misses Mr. Benson tremendously. *Exhibit 4* (Jazmine Hudson Letter).

Mr. Benson's long-time partner and mother of his two children, Ms. Tabagoua, also wrote a letter on Mr. Benson's behalf. She writes that Mr. Benson is a wonderful father who, when out of custody, would make breakfast for his family every morning and ensured that Ms. Tabagoua and the children had everything they needed. She explains that their children are impacted greatly by Mr. Benson's absence. Moreover, Ms. Tabagoua wrote about other, positive aspects of Mr. Benson's life, such as the times he took to teach basketball at youth centers in Boston or volunteered at the St. Francis shelter. *Exhibit 5* (Laoura Tabagoua Letter).

As is clear from Ms. Tabagoua's letter, Mr. Benson's positive impact on others is not limited to his personal, family circle. Khari Roulhac, who served as the assistant athletic director while Mr. Benson was enrolled at Mass Bay, also wrote a letter on Mr. Benson's behalf. Mr. Roulhac wrote that Mr. Benson was a leader on and off of the basketball court, achieving honors as a student and regional recognition as a player. Mr. Roulhac also wrote about Mr. Benson's volunteer work with local youth at the basketball camps. Mr. Roulhac has also had the opportunity to spend time with Mr. Benson and writes that Mr. Benson is an excellent father who cares for his children deeply. *Exhibit 6* (Khari Roulhac Letter). Mr. Benson is far more than a criminal conviction. He has dedicated much of his life to helping others and raising his children. He is motivated to move forward, learn from his experiences, and never cease trying to become a better role model for his children. He understands that any missteps could cost him his relationship with his children and that thought pushes Mr. Benson to leave the criminal justice system far behind him.

> B. *The Recommended Sentence Provides Adequate Punishment and Deterrence for Mr. Benson*

The recommended sentence of 84 months with three years of supervised release to run concurrent with Mr. Benson's sentence out of the District of Maine is sufficient to accomplish the purposes of 18 U.S.C. §3553(a)(2). First, this sentence will, unequivocally, be Mr. Benson's longest period of incarceration and the severity of the requested sentence certainly reflects the seriousness of Mr. Benson's conviction. By the time Mr. Benson is outside of the prison with his children, his oldest daughter will be going to college. The punishment is significant, both temporally and in terms of the heavy repercussions for Mr. Benson's personal life.

In addition, it is essential to note that while Mr. Benson was incarcerated, the global COVID-19 pandemic affected the jail and prison population in a uniquely horrific way. The virus turned the Wyatt Detention Center, where Mr. Benson has been housed, into an incubator for the virus. Particularly when general familiarity with the significance and breadth of the COVID-19 virus was low, Mr. Benson feared for his life. Social distancing was impossible and frequent lockdowns cut Mr. Benson from communication with his only lifeline, his family. The increased severity of incarceration experienced by Mr. Benson and most inmates during the pandemic warrants consideration in determining how much longer to incarcerate him.

II.     Applicable Sentencing Guidelines and Recommendation of 84 Months of Incarceration

Mr. Benson requests a sentence of 84 months incarceration concurrent with the District of Maine sentence he is currently serving, and Mr. Benson submits that the requested sentence is within the advisory sentencing guideline range. The Presentence Report (PSR) dated October 13, 2021 calculated the recommended guidelines sentence range at 120-150 months, with a

statutorily authorized maximum sentence of 10 years or 120 months. PSR at ¶ 90. Therefore, the guideline range, according to U.S. Probation, is 120 months.

Specifically, U.S. Probation has calculated a four-point enhancement pursuant to USSG §2K2.1(b)(6)(B), to which Mr. Benson objects. According to U.S. Probation, the enhancement applies for two, main reasons: (1) the alleged drug transaction leading to Mr. Benson's arrest in this case; and (2) communications extracted from Mr. Benson's phone.

First, the alleged drug transaction on April 5, 2021 should not be considered relevant conduct as it cannot be established by a preponderance of the evidence. Mr. Benson was not charged with any drug offense in conjunction with this case. No drugs were recovered from Mr. Benson and the individual to which Mr. Benson allegedly sold drugs was not searched prior to any alleged sale by police or produced at trial by the government. Second, the text messages referenced by U.S. Probation in applying the §2K2.1(b)(6)(B) enhancement should not be considered for purposes of the four-level enhancement either. U.S. Probation notes that according to text messages on Mr. Benson's phone, Mr. Benson attempted to acquire a firearm as early as June 2017 and again in October 2018. However, Mr. Benson's alleged efforts to secure a firearm show that it was unlikely that he possessed a firearm while he was sending these alleged drug related texts. Moreover, despite hundreds of text messages, and many alleged drug-related text messages, there are no text messages confirming acquisition of a firearm or even arranging the acquisition of a firearm.

The defendant does not object to U.S. Probation's other calculations. As a result, removing the four-level enhancement, Mr. Benson's total offense level is 22, and with a criminal history category of VI, Mr. Benson's guideline imprisonment range is 84-105 months. Mr.

Benson respectfully requests that this Court sentence him to the 84 months, with three years of supervised release, concurrent with his sentence out of the District of Maine.

III.     Conclusion

For the above reasons, Mr. Benson requests that the Court impose a sentence 84 months incarceration with 36 months of supervised release.

>Respectfully Submitted,
>Counsel for the defendant,
>
>*/s/ Claudia Lagos*
>Claudia Lagos
>Scully & Lagos
>101 Summer Street
>Fourth Floor
>Boston, MA  02110
>(617) 307-5056

Dated: November 8, 2021

**Certificate of Service**

I hereby certify that a copy of this Motion was served via ECF to all registered participants identified in the Notice of Electronic Filing (NEF) and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF System. /s/ *Claudia Lagos*, November 8, 2021